# COUNTY OF WASHINGTON,

#### AT THE

## AUGUST TERM, 1872.

PRESENT :

Hon. JAMES BARRETT,
Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD, } ASSISTANT JUDGES.
Hon. JONATHAN ROSS,

---

IRA ANDREWS, ADMINISTRATOR OF MARTIN ANDREWS' ESTATE, *v.*
THE TOWN OF MORETOWN.

*Practice.*

It is the duty of the court to submit to the jury every material issue raised by the evidence in the case.

If there is any evidence tending to show that the parties to a contract might have understood it in a particular way, it is not error for the court, but rather their duty, to submit it to the jury to find whether they did so understand it.

ASSUMPSIT for a town bounty. Plea, the general issue, and trial by jury, March term, 1872, PECK, J., presiding.

The intestate enlisted to the credit of the defendant, on the 31st of March, 1864, under a contract made by his father, the plaintiff, with Charles Liscomb, one of the defendant's selectmen, that he should have a bounty of two hundred dollars, and as much more

as the town paid any one else. · Liscomb said to the plaintiff at the time the contract was made, "You will get more than two hundred dollars bounty, because we have got to pay what other folks do, and we have got to have the men." There was nothing in the testimony which limited the contract to the payment of two hundred dollars, and as much more as the town paid to fill the then existing call upon the town for men. Under a warning of May 24, 1864, "to see if the town will instruct the selectmen to procure volunteers to fill the deficiency on the draft, and also to fill the quota on the present call," the town voted on the 6th of June, 1864, " to accept the ten men already furnished by the selectmen," and instructed the selectmen " to procure volunteers enough to fill the next requisition of the government, if they in their judgment shall think it best." At the time said contract was made, the defendant's need for men was upon its quota under the call of March 14, 1864, upon which quota the intestate applied. The town paid as high as seven hundred dollars for men under a future call; but there was no evidence that it paid over two hundred dollars under the call of March 14th. The plaintiff claimed to recover seven hundred dollars, less the two hundred dollar bounty paid to the intestate. The court charged the jury, among other things not excepted to, that it was for them to find how the parties understood the contract at the time it was made; that if they mutually understood that the intestate was to have two hundred dollars, and only so much more as the town paid any one else to go upon the then existing call upon the town for men, the plaintiff could not recover; to which the plaintiff excepted.

*Heaton & Reed* and *T. J. Deavitt*, for the plaintiff.

The contract was to pay the intestate as much as the town should pay anybody, without reference to any particular call. The court should have so instructed the jury as matter of law. There was nothing to be submitted to the jury.

*Randall & Durant*, for the defendant.

The case comes clearly within *Wrisley* v. *Waterbury*, 42 Vt. 228, and *Bucklin* v. *Sudbury*, 43 Vt. 700.

The opinion of the court was delivered by

Ross, J.  The plaintiff's evidence, which was the only evidence in the case upon the point on which the exception arises, was, " that the agreement was that the town would pay his son Martin (the intestate) a bounty of two hundred dollars, and if they paid anybody else any more, they would pay his son Martin just as much as they paid anybody ; that Liscomb (the selectman with whom the trade was made) said at the same time to the witness, ' you will get more than two hundred dollars bounty because we have got to pay what other folks pay, and we have got to have the men.' " The town was raising men at that time to fill a quota of ten men, and had given its selectmen authority to raise the men necessary to fill the quota. There was nothing in the testimony stating the contract that, in terms, limited it to the payment of two hundred dollars, and as much more as the town should pay to fill the then existing call upon the town for men.

Was it error for the court, under this state of the testimony, to submit to the jury to find whether the parties to the contract mutually understood that the payment of more than two hundred dollars depended upon whether the town should pay more than that sum to fill the then existing call upon the town for men ?  The answer to this question depends upon whether there was any evidence tending to show that the parties to the contract might have so understood it.  If there was any evidence having such a tendency, it was not only not error for the court to submit that issue to the jury, but it would have been error in the court not to have submitted it to the jury.  It is clearly the duty of the court, by repeated decisions in this state, and elsewhere, to submit to the jury every material issue raised by the evidence in the case.  We think the facts, that there was no other call then pending, that the selectmen were only authorized to raise men to fill the then existing call, which was probably known to the plaintiff, and the language used by Liscomb, " we have got to pay what other folks pay, and we have got to have *the men*," evidently referring to the ten men which the town was then called upon to raise, all tended to show that the parties might have understood that the obligation of the town to pay the intestate more than two hundred dollars depended upon

whether the town paid any other person more than that sum to fill the then existing call. It was altogether uncertain whether any further call for men would be made upon the town. It was quite improbable that the parties would have entered into a contract which they understood the selectmen had no authority to enter into.

Judgment affirmed.

